IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| HENDRICKSON TRANSPORTATION, LLC, <br><br> Plaintiff, <br><br> v. <br><br> RUST CONSTRUCTORS, INC., SHIMMICK CONSTRUCTION COMPANY, AECOM TECHNICAL SERVICES, INC., <br><br> Defendants. | CASE NO. _____ <br><br> **COMPLAINT** |

COMES NOW Plaintiff Hendrickson Transportation, LLC ("Hendrickson"), by and through the undersigned counsel, and for its Complaint against Defendants, Rust Constructors, Inc. ("Rust"), Shimmick Construction Company ("Shimmick"), and AECOM Technical Services, Inc. ("ATS"), states and alleges as follows:

**PARTIES & VENUE**

1. Plaintiff Hendrickson is a limited liability company organized and existing under the laws of the state of Iowa with its principal place of business located in Hamburg, Fremont County, Iowa. Hendrickson is authorized to conduct business, and has conducted business, in the state of Missouri.

2. The sole member of Hendrickson is Darin Hendrickson.

3. Darin Hendrickson is a citizen of Fremont County, Iowa.

4. Rust is a corporation organized and existing under the laws of the state of Delaware with its principal place of business located in Denver, Colorado. Rust is authorized to conduct

business, and has conducted business, in the state of Missouri, and therefore is subject to personal jurisdiction before this court.

5. Shimmick is a corporation organized and existing under the laws of the state of California with its principal place of business in Irvine, California.

6. Shimmick is authorized to conduct business, and has conducted business, in the state of Missouri, and therefore is subject to personal jurisdiction before this court.

7. Rust's direct parent company, at all relevant times, is and was Shimmick.

8. Rust is Shimmick's open-shop division.

9. AECOM Technical Services, Inc. ("ATS") is a California corporation, with its principal executive office in Los Angeles, California.

10. ATS is authorized to conduct business, and has conducted business, in the state of Missouri, and therefore is subject to personal jurisdiction before this court. ATS is a subsidiary of AECOM.

11. In 2020, Shimmick was a part of AECOM's construction services business unit, specializing in self-performing heavy civil projects, including dams, levees, locks, bridges, highways, and underground utilities construction.

12. In January of 2021, AECOM sold Shimmick, and Shimmick began operating as an independent company.

13. Pursuant to 28 U.S.C. § 1332, this Court has jurisdiction over all of Plaintiff's claims, in that there is complete diversity of citizenship between Plaintiff and Defendants, and the amount in controversy alleged by Plaintiff exceeds $75,000, exclusive of interest and costs. Venue in the U.S. District Court for the Western District of Missouri is proper under 28 U.S.C. § 1391 in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in

Atchison and Holt Counties and Defendant transacts business and is subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

14. Hendrickson incorporates and repleads paragraphs 1 through 13 herein.

15. Upon information and belief, on or about May 19, 2020, ATS entered into a contract with the Omaha District for the United States Army Corp of Engineers ("USACE"), Contract Number W9128F20D0008 (the "Contract"), to furnish materials and perform the labor for the RDI2 MATOC L-546 Levee Repair Project in Missouri ("Project").

16. The Contract is a cost-plus-fixed-fee contract.

17. Upon information and belief, Rust and ATS executed an intercompany agreement whereby ATS subcontracted 100% of the Contract work, equipment, and services for the Project to Rust.

18. The technical proposal submitted by ATS to USACE prior to award of the Contract included resumes that indicated key personnel had worked for AECOM for lengthy periods when they were employees of Shimmick or Rust, affiliated to ATS, under the same parent company, AECOM.

19. On or about June 19, 2020, Rust, as a fully owned subsidiary of Shimmick, and authorized agent of Shimmick, entered into a subcontract with Hendrickson ("Earthwork Subcontract") where Hendrickson agreed to furnish all labor, materials, and equipment necessary to perform earthwork operations on the Project for $2,762,298.39. *See* Earthwork Subcontract, attached as Exhibit "A". The General Conditions of the applicable purchase orders incorporated into the Subcontract state that Contractor is "RUST CONSTRUCTORS, INC. ("COMPANY" or "AECOM")."

20. Hendrickson started to perform earthwork on the Project starting June 22, 2020.

21. On or about June 30, 2020, Rust entered into a Subcontract modification with Hendrickson ("Earthwork Modification 1") where Hendrickson agreed to furnish all labor, materials, and equipment necessary to perform earthwork operations on the Project. Earthwork Modification 1 did not change the value of the Subcontract. *See* Earthwork Modification 1, attached as Exhibit "B".

22. Employees of ATS, Rust, and Shimmick were all involved in and participated in managing the Project, including managing subcontractors like Hendrickson.

23. Shimmick or Rust employed nearly all field personnel on the Project.

24. As the work progressed, ATS, Rust, and Shimmick identified new heavy equipment needs that could not have been contemplated at the time of the original earthwork procurements.

25. Given the cost-reimbursable contract model for the Contract, the emergency nature of the Project, and the challenges of completing the work before the next high-water season, USACE provided daily oversight and direction of the resources allocated, means and methods used, and costs incurred on the Project, including approval of work by ATS, Rust, Shimmick, and Rust's subcontractors.

26. ATS, Rust, and Shimmick sought to competitively procure these new items of heavy equipment.

27. ATS, Rust, and Shimmick verified the reasonability of Hendrickson's prices for this additional equipment by checking it against Equipment Watch and/or by performing other market research.

28. ATS, Rust, and Shimmick determined that Hendrickson's pricing for heavy equipment was reasonable. On or about November 6, 2020, Rust entered into an Earthwork

4

Subcontract modification with Hendrickson ("Earthwork Modification 2") where Hendrickson agreed to furnish additional labor, materials, and equipment necessary to perform earthwork operations on the Project for an additional $11,959,699.23. *See* Earthwork Modification 2, attached as Exhibit "C".

29. Rust, using Shimmick employees, prepared and submitted consent documents to USACE on "AECOM" letterhead, representing ATS, for the modifications to the Earthwork Subcontract outlined in Earthwork Modification 2.

30. Upon information and belief, on January 4, 2021, ATS's parent company, AECOM, publicly announced the completion of the sale of its civil construction business, which included Shimmick and Rust. However, once AECOM sold Shimmick, Shimmick or Rust continued to manage and oversee the subcontracts.

31. For example, the Project Manager (J.J. Johnson) from Shimmick continued to modify subcontracts on "AECOM" letterhead after the sale of Shimmick, signing the documents as the AECOM Project Manager.

32. On January 5, 2021, ATS and USACE held a virtual meeting to discuss AECOM's sale of Shimmick. ATS confirmed that Rust was part of Shimmick. In addition, ATS stated they did not anticipate any cost changes to the task order and that all invoicing would remain unchanged.

33. On or about January 14, 2021, Rust entered into an Earthwork Subcontract modification with Hendrickson ("Earthwork Modification 3") where Hendrickson agreed to furnish additional labor, materials, and equipment necessary to perform earthwork operations on the Project for an additional $17,147,093.74. *See* Earthwork Modification 3, attached as Exhibit "D".

34. Rust, using Shimmick employees, prepared and submitted the consent documents to USACE on "AECOM" letterhead, representing ATS, for the modifications to the Subcontract outlined in Earthwork Modification 3.

35. For example, the consents provided to USACE were issued on ATS letterhead and signed by J.J. Johnson as the ATS Project Manager (with a Shimmick e-mail).

36. Upon information and belief, as of February 2021, ATS, Rust, and Shimmick were still awaiting consent from USACE for both Earthwork Modification 2 and Earthwork Modification 3 to the Earthwork Subcontract.

37. Despite not having consent from USACE for Earthwork Modifications 2 and 3, ATS, Rust, and Shimmick directed Hendrickson to complete this work. At the time, Hendrickson was not aware that consent had not been provided by USACE for Earthwork Modifications 2 and 3.

38. On February 2, 2021, ATS sent the existing USACE Contracting Officer a letter requesting a subcontract consent waiver for Rust, stating that Rust was an affiliate of ATS, and ATS's proposal included Rust's costs, which would not change from the sale. In addition, ATS requested that USACE waive the contractual requirement that the prime contractor must employ key personnel.

39. On February 26, 2021, David Neal, the Contracting Officer for USACE, sent ATS an e-mail informing them that he was taking over as the contracting officer on the Project and had several items to discuss, including the relationship between Rust, Shimmick, and ATS, which he thought was unclear.

102459787.v1

40. The USACE Contracting Officer also told ATS there were two outstanding consents for modifications to the Hendrickson subcontract that ATS sent to USACE, where it appeared that Hendrickson had already begun or completed the work.

41. The USACE Contracting Officer expressed concern regarding timely payments to subcontractors, specifically Hendrickson, and said that ATS must clearly define the lines of authority and responsibility through the formal subcontract between ATS and Rust.

42. At the time, Hendrickson was not aware of the statements made by the USACE Contracting Officer on February 26, 2021.

43. On or about March 1, 2021, Rust entered into an Earthwork Subcontract modification with Hendrickson ("Earthwork Modification 4") where Hendrickson agreed to furnish additional labor, materials, and equipment necessary to perform earthwork operations on the Project for an additional $27,820,962.55. *See* Earthwork Modification 4, attached as Exhibit "E".

44. On May 12, 2021, the USACE Contracting Officer sent ATS a letter and requested information to show compliance with its purchasing system for its subcontract with Rust. In the letter, he also stated that the relationship between Rust and Shimmick was still unclear to the USACE.

45. For example, the USACE Contracting Officer noted that ATS's invoices included employee timecards from both companies for the same employee.

46. On or about June 7, 2021, Rust entered into an Earthwork Subcontract modification with Hendrickson ("Earthwork Modification 5") where Hendrickson agreed to furnish additional labor, materials, and equipment necessary to perform earthwork operations on the Project for an additional $11,384,574.00. *See* Earthwork Modification 5, attached as Exhibit "F".

47. On July 8, 2021, the USACE Contracting Officer's representative sent ATS's Project Manager, J.J. Johnson, an e-mail regarding reducing Hendrickson's field management staff.

48. The USACE Contracting Officer's representative noted that Rust implied they needed Hendrickson staff to supervise the other subcontractors, but that the prime contractor (ATS) is responsible for subcontractor management.

49. On July 8, 2021, J.J. Johnson e-mailed ATS and stated he disagreed with downsizing Rust's field supervision. The same day, ATS sent USACE an e-mail regarding the request to reduce site oversight, saying they felt it premature to reduce site oversight with the recently issued change orders. ATS also said that Rust had delegated Don Gallagher as the new site superintendent.

50. On August 27, 2021, the USACE Contracting Officer sent ATS an e-mail and expressed concerns with J.J. Johnson from Shimmick, who was serving as the Project Manager, noting that ATS did not appear to have employed J.J. Johnson even though he was responsible for managing and executing all construction activities on the task order. The USACE Contracting Officer explained that the Contract required ATS to employ the Project Manager.

51. In the August 27, 2021 email, the USACE Contracting Officer also noted that based on the language of the original subcontracts and modifications, it appeared that ATS was responsible for those agreements. However, ATS was not managing the subcontracts, but allowed Rust to oversee them, creating significant issues.

52. On or about September 22, 2021, Rust entered into an Earthwork Subcontract modification with Hendrickson ("Earthwork Modification 6") where Hendrickson agreed to

8

102459787.v1

Case 5:23-cv-06077-HFS    Document 1    Filed 06/22/23    Page 8 of 20

modify its equipment rate sheet on the Project. Earthwork Modification 6 did not change the value of the Subcontract. *See* Earthwork Modification 6, attached as Exhibit "G".

53. On October 26, 2021, the USACE Contracting Officer sent ATS an e-mail regarding Hendrickson's subcontract costs, stating that ATS was responsible for monitoring its subcontracts. ATS, Shimmick, and Rust did not provide a copy of this email to Hendrickson.

54. In the October 26, 2021 email, the USACE Contracting Officer expressed concerns about how ATS was administering the Project. For example, it appeared that ATS allowed Rust to submit invoices and receive reimbursement for "high and unsubstantiated" costs. He also questioned the allowability of Hendrickson's costs because the Hendrickson earthwork subcontract did not include estimated effort/hours for labor or equipment.

55. On November 17, 2021, the USACE Contracting Officer sent ATS an email asking why a sole source request document from Rust referenced "AECOM," but was signed by a Shimmick employee.

56. In addition, in the November 17, 2021 email, the USACE Contracting Officer questioned whether Rust followed proper procedures and adhered to its subcontract terms, which could affect the allowability of incurred costs. He also noted his previous requests for a signed copy of the subcontract between ATS and Rust, which he had yet to receive.

57. In the November 17, 2021 email, the USACE Contracting Officer requested supporting documentation from ATS to show that Rust followed proper administrative procedures. He also said it was apparent that there continued to be a fundamental misunderstanding of proper contract administration, particularly with the responsibilities of Rust, creating a significant risk to USACE.

9
102459787.v1
Case 5:23-cv-06077-HFS    Document 1    Filed 06/22/23    Page 9 of 20

58. On or about November 22, 2021, USACE terminated ATS for convenience. *See* Notice of Termination for Convenience, attached as Exhibit "H".

59. In turn, ATS, Rust, and Shimmick notified Hendrickson that the Earthwork Subcontract would be terminated for convenience.

60. The total value of the Earthwork Subcontract and Earthwork Modifications through 6 prior to the termination totaled $71,074,627.91.

61. The termination for convenience required Hendrickson to immediately stop work on the Project except for site cleanup, protecting serviceable materials, and removing hazards in three of the Project areas.

62. On December 9, 2021, ATS sent an email to the USACE Contracting Officer and stated that at the direction of the Government, Rust and Hendrickson performed "at-risk" work until the Government issued a limitation of cost modification to increase funding.

63. At no time was Hendrickson aware that Rust, ATS, or Shimmick had directed Hendrickson to perform "at-risk" work that had not been approved or consented to by USACE.

64. Hendrickson completed its work on the Project on January 13, 2022.

65. Hendrickson applied for Final Payment from Rust on January 28, 2022.

66. On or about January 31, 2022, Rust entered into an Earthwork Subcontract modification with Hendrickson ("Earthwork Modification 7") where Hendrickson agreed to modify its equipment rate sheet on the Project. Earthwork Modification 7 did not change the value of the Subcontract. *See* Earthwork Modification 7, attached as Exhibit "I".

67. On or about April 19, 2022, Rust entered into an Earthwork Subcontract modification with Hendrickson ("Earthwork Modification 8") where Hendrickson agreed to

furnish additional labor, materials, and equipment necessary to perform earthwork operations on the Project for an additional $8,119.40. *See* Earthwork Modification 8, attached as Exhibit "J".

68. The total value of the Earthwork Subcontract with Hendrickson and Earthwork Modifications 1 through 8 totals $71,082,747.31.

69. On or about September 30, 2020, Rust entered into a purchase order with Hendrickson where Hendrickson agreed to deliver material necessary to perform the legal highway transport work ("Highway Transport Work") on the Project for $470,066.67 ("Highway Transport Purchase Order"). *See* Highway Transport Purchase Order, Exhibit "K".

70. On or about November 13, 2020, Rust entered into a modification with Hendrickson where Hendrickson agreed to modify the scope of the Highway Transport Work ("Highway Transport Modification 1"). Highway Transport Modification 1 did not change the value of the Highway Transport Purchase Order. *See* Highway Transport Modification 1, Exhibit "L".

71. On or about November 17, 2020, Rust entered into a modification with Hendrickson where Hendrickson agreed to modify the rates of the Highway Transport Work ("Highway Transport Modification 2"). Highway Transport Modification 2 did not change the value of the Highway Transport Purchase Order. *See* Highway Transport Modification 2, Exhibit "M".

72. On or about February 8, 2021, Rust entered into a modification with Hendrickson where Hendrickson agreed to deliver additional material for the Highway Transport Work ("Highway Transport Modification 3") for an additional $3,687,834.57. *See* Highway Transport Modification 3, Exhibit "N".

11

73. On or about April 19, 2021, Rust entered into a modification with Hendrickson where Hendrickson agreed to deliver additional material for the Highway Transport Work ("Highway Transport Modification 4") for an additional $3,261,944.76. *See* Highway Transport Modification 4, Exhibit "O".

74. The total value of the Highway Transport Purchase Order and Highway Transport Modifications 1 through 4 prior to the termination totaled $7,419,846.00.

75. On or about October 13, 2020, Rust entered into a subcontract with Hendrickson where Hendrickson agreed to furnish labor, material, and equipment necessary to perform the levee surfacing work ("Levee Surfacing Work") on the Project for $71,120.00 ("Levee Surfacing Subcontract"). *See* Levee Surfacing Subcontract, Exhibit "P".

76. On or about November 17, 2020, Rust entered into a modification with Hendrickson where Hendrickson agreed to furnish additional labor, material, and equipment necessary to perform the Levee Surfacing Work ("Levee Surfacing Modification 1") for an additional $19,900.00. *See* Levee Surfacing Modification 1, Exhibit "Q".

77. On or about February 10, 2022, Rust entered into a modification with Hendrickson where Hendrickson agreed to furnish additional labor, material, and equipment necessary to perform the Levee Surfacing Work ("Levee Surfacing Modification 2") for an additional $170.80. *See* Levee Surfacing Modification 2, Exhibit "R".

78. The total value of the Levee Surfacing Subcontract and Levee Surfacing Modification 1 prior to the termination totaled $91,020.00.

79. The total value of the Levee Surfacing Subcontract with Hendrickson and Levee Surfacing Modifications 1 and 2 totals $91,190.80. Upon information and belief, ATS, Rust, and

12
102459787.v1
Case 5:23-cv-06077-HFS   Document 1   Filed 06/22/23   Page 12 of 20

Shimmick did not obtain consent from USACE for any modifications to the Subcontracts and Purchase Order, aside from Earthwork Modification 1.

80. Between January 27, 2021 and February 15, 2021, Rust and Hendrickson entered into several work orders where Hendrickson agreed to furnish additional labor, material, and equipment necessary to repair equipment on the Project, totaling $4,718.53.

81. Upon information and belief, ATS, Rust, and Shimmick did not obtain consent from USACE for these additional repairs.

82. On or about April 22, 2021, Rust and Hendrickson entered into an agreement where Hendrickson agreed to mobilize and demobilize certain equipment onto the Project, totaling $16,200.00.

83. Upon information and belief, ATS, Rust, and Shimmick did not obtain consent from USACE for these mobilization and demobilization costs.

84. On or about August 17, 2021, Rust and Hendrickson entered into an agreement where Hendrickson agreed to furnish additional equipment necessary on the Project, totaling $3,400.87.

85. Upon information and belief, ATS, Rust, and Shimmick did not obtain consent from USACE for the additional equipment.

86. ATS has acknowledged to USACE that ATS, Rust, and Shimmick did not promptly execute subcontract and purchase order modifications.

87. The USACE Contracting Office has also said that ATS did not ensure that Rust completed each subcontract and purchase order modification per the subcontract terms. For example, ATS permitted Rust to modify two subcontracts (Earthwork and Highway Transport) with Hendrickson, where Rust did not obtain certified cost or pricing data prior to the modification.

88. Despite not having consent from USACE for any modifications following Earthwork Modification 1, ATS, Rust, and Shimmick directed Hendrickson to complete this work.

89. Hendrickson completed all work as directed by ATS, Rust, and Shimmick and was not aware that USACE had not provided consent for Earthwork Modifications 2 through 8, Highway Transport Modifications 1 through 4, and the Levee Surfacing Subcontract and Modifications 1 and 2.

90. ATS, Rust, and Shimmick have reviewed all of their lower-tier subcontracts and invoices through March 2022, and did not find any evidence of unreasonable pricing or inadequate supporting documentation.

91. Upon information and belief, USACE has not made any payments to ATS, Rust, and Shimmick since at least June of 2021.

92. Upon information and belief, Rust and Shimmick have made advance payments to some of their second-tier subcontractors despite not receiving payment from USACE.

93. Upon information and belief, as of October 19, 2022, Rust and Shimmick have paid $3,678,598 in advance to several of their second-tier subcontractors without having received that payment from USACE.

94. ATS, Rust, and Shimmick refuse to transmit payment to Hendrickson for the work completed by Hendrickson on the Project.

**FIRST CLAIM FOR RELIEF**
**BREACH OF CONTRACT**

95. Hendrickson incorporates and repleads paragraphs 1 through 89 herein.

96. Rust, as a fully owned subsidiary of Shimmick, and authorized agent of Shimmick, entered into a valid Subcontract and valid Modifications of the Subcontract.

97. Rust/Shimmick directed Hendrickson to perform additional work on the Project, as provided in the Modifications, without first ensuring that USACE consented to the additional cost associated with such work. Hendrickson substantially performed its obligations under the Earthwork Subcontract, Highway Transport Purchase Order, Levee Surfacing Subcontract, and their respective Modifications (collectively, the "Agreements") until Hendrickson was terminated for convenience, thus providing sufficient consideration for enforcement of the Agreements.

98. When Hendrickson was terminated for convenience, Hendrickson completed the reasonable value of such labor, materials, and equipment in the amount of $75,330,307.55. Rust has paid $66,623,247.35 toward these services, leaving $8,707,260.20 due and owing to Hendrickson pursuant to the Agreements.

99. Rust/Shimmick materially breached the Agreements with Hendrickson by failing to pay Hendrickson the remaining money owed for the value of the labor, materials, and equipment Hendrickson provided for the Project.

100. As a proximate and direct result of Rust/Shimmick's breach of the Agreements with Hendrickson, Hendrickson has suffered damages to date in an amount of not less than $8,707,260.20.

101. Hendrickson has made demands on Rust/Shimmick for payment, but notwithstanding Hendrickson's demands, Rust/Shimmick has denied Hendrickson's claims.

102. Hendrickson and Rust/Shimmick have met to discuss Hendrickson's claim and have attempted to resolve the dispute, but such meetings have been unsuccessful.

103. All conditions precedent to asserting this claim have been fulfilled or waived.

## SECOND CLAIM FOR RELIEF
## UNJUST ENRICHMENT

104. Hendrickson incorporates and repleads paragraphs 1 through 89 herein.

102459787.v1

105. In the alternative to Hendrickson's first cause of action, Hendrickson is entitled to recover under its second cause of action.

106. Rust/Shimmick has enjoyed the value and benefit of the labor, materials, and equipment provided by Hendrickson.

107. The labor, materials, and equipment were provided by Hendrickson pursuant to the Agreements between it and Rust/Shimmick and were accepted by Rust/Shimmick with full knowledge and consent, and without objection.

108. Until Hendrickson was terminated, Hendrickson performed every obligation imposed on it under the Agreements with Rust/Shimmick.

109. Rust/Shimmick will be unjustly enriched unless it is ordered to pay Hendrickson the value of labor, materials, and equipment ordered by, provided to, and accepted by Rust.

110. The reasonable value of such labor, materials, and equipment is $75,330,307.55. Rust/Shimmick has paid Hendrickson $66,623,247.35 toward these services, leaving an unpaid balance of $8,707,260.20, representing the amount Rust/Shimmick is unjustly enriched, and damages to Hendrickson.

**THIRD CLAIM FOR RELIEF**
**ALTER EGO, VEIL-PIERCING LIABILITY**

111. Hendrickson incorporates and repleads paragraphs 1 through 105 herein.

112. At all times material to this action, Shimmick and Rust were controlled or influenced by ATS in such a way that Rust and Shimmick are mere alter egos of ATS.

113. ATS's proposal to USACE prior to being awarded the Contract did not mention Rust or Shimmick and led USACE to believe that all employees worked for ATS.

102459787.v1

114. In other words, ATS was awarded the Project by misrepresenting key personnel and the extent of its relationships with Rust and Shimmick, the organizations that would primarily perform the work on the Project.

115. Ultimately, ATS entered into a subcontract with Rust/Shimmick to perform 100% of the work on the Project. In addition, ATS agreed to pay Rust/Shimmick for its work by allowing Rust/Shimmick to add a predetermined 5% markup to its costs.

116. During the Project, ATS improperly controlled and used Rust/Shimmick for the purpose of artificially distancing ATS from what were, in all reality, ATS's own acts and omissions.

117. For example, during the Project, Rust/Shimmick employees acted as representatives or employees of ATS, both before and after ATS's sale of Rust/Shimmick in January of 2021.

118. During the Project, Hendrickson received direction from employees of ATS, Rust, and Shimmick, without distinction.

119. For example, Hendrickson would receive direction from "Rust" employees with email addresses including the url "aecom.com" and whose email signature blocks said "Shimmick, an AECOM Company."

120. For example, J.J. Johnson, the Project Manager, represented to Hendrickson that he worked for "Rust," but he had an email address url of "@shimmick.com." and sent documents on "AECOM" letterhead.

121. Upon information and belief, Rust, using Shimmick employees, prepared the consents to USACE on "AECOM" letterhead, representing ATS, for the modifications made to Hendrickson's Subcontract.

17

122. ATS allowed Rust/Shimmick to prepare and submit the documentation on its behalf, representing Rust/Shimmick as the prime contractor, even though Rust/Shimmick was allegedly a subcontractor to ATS and ATS was required to review Rust/Shimmick's documents.

123. The corporate affiliation of Rust/Shimmick was conceived or used to perpetuate fraud or injustice or accomplish some unlawful purpose.

124. As a result of the corporate affiliation of Rust/Shimmick and ATS, and the control or influence that ATS had over Rust/Shimmick on the Project, the USACE Contracting Officer terminated the Contract and withheld payment from ATS.

125. Upon information and belief, ATS has not provided USACE with the requested documentation to demonstrate it adhered to the Contract.

126. Upon information and belief, Rust/Shimmick has not provided USACE with the requested documentation to allow USACE to audit costs and profit on the Project.

127. As a result of ATS, Rust, and Shimmick's failure to provide documentation to USACE, the USACE Contracting Officer has continued to withhold payment on the Project.

128. As a result of the USACE Contracting Officer's decision to withhold payment from ATS, Rust/Shimmick made the decision to withhold payment from Hendrickson.

129. As a result of the alter ego relationship, ATS should be held jointly liable to Hendrickson for the damages caused by Rust/Shimmick's acts and omissions.

## FOURTH CLAIM FOR RELIEF
## PRINCIPAL-AGENT LIABILITY

130. Hendrickson incorporates and repleads paragraphs 1 through 105 herein.

131. In the alternative to Hendrickson's third cause of action, ATS is liable to Hendrickson for the acts and omissions of Rust/Shimmick pursuant to Principal-Agent Liability.

102459787.v1

132. ATS had the control or right to control the conduct of Rust/Shimmick in the performance of the Project, including managing subcontractors on the Project.

133. At all times during the Project, ATS had such domination and control over Rust/Shimmick, such that Shimmick and Rust had no separate mind, will, or existence of their own.

134. At all times during the Project, Shimmick and Rust were each but a business conduit for ATS.

135. The control of ATS over Rust/Shimmick was such that the court should attribute the specific acts and omissions of Rust/Shimmick during the Project to ATS, as principal, because of ATS's authorization of those acts.

136. ATS is liable to Hendrickson for the damages caused by the acts and omissions of Rust/Shimmick, because at all times, Rust/Shimmick acted on behalf of or at ATS's direction.

## PRAYER

**WHEREFORE,** Plaintiff respectfully requests the Court enter Judgment in its favor and against all Defendants, jointly and severally, by finding Plaintiff is entitled to all actual, direct, indirect, general, consequential, incidental, or other damages in an amount to be determined at trial, but not less than $8,707,260.20, plus the cost of suit, fees of experts, attorneys' fees, and prejudgment and post judgment interest, and any further relief this Court may deem just and proper.

DATED this 21st day of June, 2023.

102459787.v1

Respectfully submitted,

WALLACE SAUNDERS P.C.

By: *Marty T. Jackson*
    Marty T. Jackson, MO #KS000494
    200 NE Missouri Road, Ste. 224
    Lee's Summit, MO 64086
    (816) 251-4544 FAX-(913) 888-1065
    mjackson@wallacesaunders.com

*Attorneys for Plaintiff Hendrickson Transportation LLC*

102459787.v1